# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANGEL FERNANDO BONILLA, *et al.*, § § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-11-1974 | |
| § | | |
| AMERICA'S SERVICING § | | |
| COMPANY, A DIVISION OF WELLS § | | |
| FARGO BANK, N.A., *et al.*, § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

This case is before the Court on Plaintiffs Angel Fernando Bonilla and Julianne Denise Lizama-Bonilla's Motion to Remand [Docs. # 5, # 6] ("Motion to Remand") and Plaintiffs' Motion to Amend to join a nondiverse defendant under Federal Rule of Civil Procedure 19 [Doc. # 9]. Defendants have responded in opposition [Docs. # 7, # 12] and Plaintiffs have replied [Docs. # 10, # 13]. The Court has carefully reviewed the full record, the parties' arguments, and governing legal authorities. The Court concludes that Plaintiffs' First Amended Complaint [Doc. # 9] is properly filed pursuant to 28 U.S.C. § 1447(e), and Plaintiffs' Motion to Remand will be granted. This case will be **remanded** to the 270th Judicial District Court, Harris County, Texas.

## I.   **BACKGROUND**

This lawsuit arises out of the attempted foreclosure on a deed of trust securing a loan made on or about May 26, 2006, on Plaintiffs' home located in Houston, Texas. Defendant America's Servicing Company ("ASC"), a division of Wells Fargo Bank, N.A. ("Wells Fargo") is the current servicer of the loan. Plaintiffs allege Deutsche Bank is the trustee for FFML mortgage pass-through certificates.

Plaintiffs allege that Defendants posted their home for foreclosure on March 1, 2011. They further allege that prior to the foreclosure date, ASC agreed to cancel the foreclosure and to consider Plaintiffs' request for a loan modification. On or about March 31, 2011, Plaintiffs received a request for additional information from ASC regarding the loan modification request. Plaintiffs sent ASC the requested information. Plaintiffs allege that they subsequently called ASC twice, inquiring about the status of the loan modification request. Each time, ASC stated that the additional information had been lost or misplaced. Plaintiffs allege that they resent the information following each call. On or about April 27, 2011, Defendants notified Plaintiffs that their home was posted for foreclosure on May 3, 2011.

On May 3, 2011, Plaintiffs filed the instant suit in Texas state court against Defendants ASC and Deutsche Bank (collectively, "Defendants") claiming detrimental reliance and breach of contract. Plaintiffs seek damages and injunctive

relief to prevent the foreclosure. Plaintiffs obtained a Temporary Restraining Order ("TRO") enjoining Defendants from foreclosing. The court extended the TRO though May 27, 2011. Plaintiffs allege that on May 9, 2011, they received notice from Defendants' attorneys that the foreclosure had been cancelled.

On May 13, 2011, Plaintiffs filed a First Amended Petition in state court, and again named only ASC and Deutsche Bank as Defendants. On May 25, 2011, at 11:50 a.m., Defendants timely removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. At 1:02 p.m. the same day, after the removal, Plaintiffs filed in state court a Second Amended Petition adding Nahil Barakat ("Barakat") as a Defendant and alleging against her claims for intentional infliction of emotional distress ("IIED") and violation of the Texas Debt Collection Practices Act ("TDCPA"). Plaintiffs allege that Barakat repeatedly came by their home "to inform them that they had to vacate their home by Sunday, May 15, 2011, so that she could put their house on the market." Further, Plaintiffs allege that Barakat told Plaintiffs' children that "their parents would have to leave their house despite the fact that no eviction proceeding has taken place."

Plaintiffs filed a Motion to Remand [Doc. # 5] on June 23, 2011, contending there was a lack of federal subject matter jurisdiction because there was no complete diversity in light of Barakat's addition to the suit. Defendants responded in opposition

that Plaintiffs' Second Amended Petition filed in state court was ineffective to destroy diversity jurisdiction because the pleading was docketed after the notice of removal and the state court's loss of jurisdiction. As Defendants argue, Barakat was not a party to this lawsuit at the time of removal and removal was proper. *See* Defendants' Response to Plaintiffs' Motion to Remand [Doc. #7].

On July 21, 2011, Plaintiffs filed a First Amended Complaint [Doc. # 9] in this Court naming Barakat as a Defendant and including the IIED and TDCPA claims previously alleged. The Court entered an Order construing the First Amended Complaint as a Motion to Amend to join a nondiverse defendant under Rule 19 of the Federal Rules of Civil Procedure. The Court now must determine whether joinder of Barakat as a Defendant is proper notwithstanding that her joinder will destroy complete diversity of citizenship of the parties and require remand of this action to state court.

## II.  DISCUSSION

### A.  Legal Standards

Generally, a ruling on a request for leave to amend a pleading is committed to the district court's sound discretion. Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607-08 (5th Cir. 1998).[1]

---

[1] In general, other than in a joinder that will destroy subject-matter jurisdiction, the Fifth Circuit has concluded that Rule 15(a) "evinces a bias in favor of granting leave to amend." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (citations

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  Where, as here, a plaintiff moves to add a defendant that would destroy subject matter jurisdiction, the Court must balance the original defendant's interests in maintaining the case in federal court with the competing interests of not having parallel lawsuits by considering a number of factors.  *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367 (5th Cir. 2010) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)); *see also Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005).

The factors to be considered in balancing the parties' respective interests were delineated by the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987).  They include (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4)

---

omitted).  However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."  *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citations and internal quotation marks omitted); *accord Goldstein*, 340 F.3d at 254; *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992), *aff'd*, 37 F.3d 1069, 1073 n.8 (5th Cir. 1994) (*en banc*).

any other factors bearing on the equities. *Id.* at 1182. The Court then balances the equities to decide whether the proposed amendment would be permitted. *Id.* If the amendment of the nondiverse defendant is allowed, then the case must be remanded to state court. *Id.* If the amendment is not allowed, then the federal court maintains jurisdiction. *Id.*

    **B.**    **Analysis**

***Is Plaintiffs' Purpose of the Amendment to Defeat Federal Jurisdiction?*–** Under the first *Hensgens* factor, the Court considers the extent to which the purpose of the amendment is to defeat federal jurisdiction. A plaintiff's principal purpose is not to destroy diversity jurisdiction as long as the plaintiff states a potentially valid claim against the new defendant. *See Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991); *Jackson v. Wal-Mart Stores*, Inc., No. Civ.A. 03-2184, 2003 WL 22533619, at *1 (E.D. La. Nov. 6, 2003). Here, Plaintiffs allege that Barakat caused them emotional distress by engaging in extreme and outrageous conduct, and violated the TDCPA because she engaged in wrongful debt collection, each by urging Plaintiffs to vacate the house so she could sell it despite the fact that the state court had granted a stay of the foreclosure and the foreclosure had been cancelled. If Plaintiffs have alleged even one potentially valid claim against Barakat, then there is no basis to conclude that Plaintiffs' sole or principal purpose is to defeat federal jurisdiction.

For a viable claim for intentional infliction of emotional distress, a plaintiff must allege facts showing the following: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001); *Hoffmann–LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)). The outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman*, 144 S.W.3d at 445 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).

Accepting Plaintiffs' allegations as true for purposes of this joinder analysis, Plaintiffs have alleged facts that a jury conceivably could find "extreme and outrageous." First, Barakat allegedly incorrectly and repeatedly told Plaintiffs that they must vacate their home even though Plaintiffs had obtained a temporary restraining order in state court and Defendants had cancelled the foreclosure sale.

Second, despite the TRO enjoining the foreclosure, Barakat repeatedly told Plaintiffs and their school-age children saying they needed to pack up and leave the home so she could sell the house.  These allegations make this case unusual.  Defendants' citation of cases such as *Whittle v. Miles Homes, Inc.*, No. 92-1761, 1993 WL 209969, at *1 (5th Cir. June 4, 1993), and *Lopez v. Countrywide Mortg.*, No. 2:06–116, 2008 WL 4682040, at *1 (S.D. Tex., Oct. 20, 2008), are unpersuasive.  In those cases, the plaintiffs' main bases for their IIED claims consisted of, respectively, the defendant's mailing of foreclosure notices required by Texas law, *Whittle*, 1993 WL 209969, at *3, and the defendants' alleged false filing of title documents, *Lopez*, 2008 WL 4682040, at *7.  Barakat's alleged conduct involving communications with Plaintiffs and their children is materially different.

Plaintiffs also allege that Barakat's actions caused them emotional distress because they "now fear that they will lose their home and become homeless."  First Amended Complaint [Doc. # 9, ¶ 25].  While Plaintiffs do not expressly allege their distress was "severe," the circumstances they allege could support such a factual inference.  This Court is unpersuaded that Plaintiffs cannot make the necessary showing of emotional distress.

Plaintiffs also allege that Barakat violated the Texas Debt Collection Practices Act ("TDCPA").  The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers.

*See* TEX. FIN. CODE. §§ 392.301–392.306. The TDCPA defines a "debt collector" as "a person who directly or *indirectly* engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." *Id.*, § 392.001(6) (emphasis added). This Court's research does not show any authority precluding a real estate broker from falling within the statutory definition of a "debt collector" under some set of circumstances.[2] Therefore, Defendants have not established as a matter of law that Plaintiffs cannot pursue a TDCPA cause of action against Barakat. *Compare generally Wilson*, 602 F.3d at 368, 373 (plaintiffs' claim against the nondiverse defendant was time-barred as a matter of law).

Plaintiffs have alleged facts sufficient to show that they had a substantive purpose for naming Barakat in this case with IIED and TDCPA claims. These claims do not appear to have been merely to destroy federal diversity jurisdiction. The first *Hensgens* factor weighs in favor of granting Plaintiffs leave to amend.

***Whether Plaintiff Has Been Dilatory in Asking for Amendment.*** – The Court must consider also whether Plaintiffs have been dilatory in seeking the amendment.

---

[2] The Texas Supreme Court has not addressed whether obtaining a foreclosure on collateral for a debt is "debt collection" under the TDCPA. *See Biggers v. BAC Home Loans Serv., LP*, 767 F. Supp 2d 725, 730 (N.D. Tex. 2011) (noting that intermediate Texas appellate courts have decided cases involving foreclosure-related claims under the TDCPA without suggesting that foreclosures do not qualify as "debt collection") (citing *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453 (Tex. App. 2002)).

Plaintiffs filed the instant case in state court on May 3, 2011. Plaintiffs tried to add Barakat in their Second Amended Petition filed on May 25, 2011, a mere three weeks after the case was commenced in state court. Because the additional party and claims in the Second Amended Petition are the same as those in the First Amended Complaint, Plaintiffs were not dilatory in giving Defendants notice of their intentions to add Barakat well before the filing of the First Amended Complaint on July 21. The second *Hensgens* factor favors Plaintiffs' being granted leave to amend.[3]

***Whether Plaintiff Will be Significantly Injured If Amendment Is Not Allowed.–*** The Court next considers whether Plaintiffs will be significantly injured if amendment is not allowed. Here, the facts underlying Plaintiffs' claims against Barakat are partially related to and dependent upon the facts underlying their claims against Defendants ASC and Deutsche Bank. It is likely that Barakat will assert the propriety of the foreclosure and the viability of the state court's TRO as justifications for her conduct. Defendants' employees will be witnesses on these topics and their testimony will be pertinent to Plaintiffs' claims against Barakat. There also is a question about whether Barakat acted as an agent of Defendants. Resolution of these

---

[3] Plaintiffs' failure to add the IIED and TDCPA claims in their First Amended Petition filed in state court on May 13, 2011 also does not render Plaintiffs dilatory. Accepting Plaintiffs' allegations as true for purposes of joinder analysis, Barakat's offending conduct did not occur until after the state court granted Plaintiffs the TRO on May 3, 2011, and after Defendants cancelled the foreclosure sale on or about May 9, 2001. Therefore, it was understandable that Plaintiffs sought to add Barakat in their Second Amended Petition (filed on May 25), but not in their First Amended Petition (filed on May 13), and the timing here is not evidence of dilatoriness.

issues will need to await further factual development, but these questions are likely implicated in both suits. If joinder is denied, Plaintiffs will have to pursue any claim against Barakat in a separate suit in state court—in a different court system, on a different timetable, and under different procedural rules. Findings or legal conclusions on the overlapping topics in one action could impair a party's rights in the second-tried suit. Because denial of joinder could cause significant prejudice to Plaintiffs, this factor weighs in favor of permitting the amendment and one lawsuit.

***Other Factors Bearing on the Equities.*–** Last, the Court must consider other factors that bear on the equities. This fourth *Hensgens* factor enables courts to address case-by-case any unique circumstances presented. This factor reflects the Court of Appeals' overriding goal to balance the diverse defendant's interests in retaining the federal forum and the plaintiff's competing interest of avoiding parallel litigation with the "inherent dangers of inconsistent results and the waste of judicial resources." *Hensgens*, 833 F.2d at 1182. In the case at bar, Plaintiffs apparently have only limited means. Declining the amendment will substantially increase the cost and complexity of litigation for both parties. While Defendants clearly have an interest in retaining the federal forum, a parallel suit in state court apparently may preclude Plaintiffs from pursuing their claims against Barakat. Moreover, state courts are well suited to address the issues in this suit. The fourth *Hensgens* factor favors allowing the amendment.

All four relevant factors thus favor allowing Plaintiffs to join Barakat as a defendant in an IIED and a TDCPA claim.

## III.     CONCLUSION AND ORDER

The unusual facts alleged by Plaintiffs about Barakat's conduct persuade the Court that Plaintiffs' inclusion of the two claims against Barakat was not merely to destroy diversity. Plaintiffs were not dilatory in adding these claims. Requiring Plaintiffs to litigate against Barakat in state court while the rest of this dispute remains in federal court easily could create potentially inconsistent discovery rulings, potentially difficult collateral estoppel issues, and other problems that would result in unnecessary waste of judicial and party resources. On balance, Plaintiffs have a stronger interest in avoiding parallel litigation than Defendants' interest in litigation in a federal forum. The Court concludes that Plaintiffs' First Amended Complaint is properly filed. Because joinder of the nondiverse defendant destroys this Court's subject matter jurisdiction, the case will be remanded pursuant to 28 U.S.C. § 1447(e). Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion to Amend to join a nondiverse defendant is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion to Remand [Doc. # 5] is **GRANTED**.

The Court will issue a separate Remand Order.

SIGNED at Houston, Texas, this **2nd** day of **September, 2011**.

Nancy F. Atlas
United States District Judge